UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

TAMARA T. B.[1],                            )
                                           )
                    Plaintiff,             )
                                           )
        v.                                 )  Case No. 2:20-cv-470
                                           )
KILOLO KIJAKAZI[2],                        )
Commissioner of Social Security,           )
                                           )
                    Defendant.             )

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the

Commissioner filed by the plaintiff, Tamara B., on December 22, 2020.  For the following

reasons, the decision of the Commissioner is **AFFIRMED.**

*Background*

The plaintiff, Tamara B., filed an application for Disability Insurance Benefits (DIB),

alleging a disability onset date of February 22, 2018.  (Tr. 28).  The Disability Determination

Bureau denied Tamara B.'s applications initially on August 14, 2018, and again upon

reconsideration on December 19, 2018.  (Tr. 89-100, 101-113).  Tamara B. subsequently filed a

timely request for a hearing on December 31, 2018.  (Tr. 123).  A hearing was held on October

11, 2019, before Administrative Law Judge (ALJ) Edward Kristof.  (Tr. 53).  Vocational Expert

(VE) Kathleen Sloan also appeared at the hearing.  (Tr. 53).  The ALJ issued an unfavorable

decision on March 24, 2020.  (Tr. 25-41).  The Appeals Council denied review making the ALJ's

---

[1] To protect privacy, the plaintiff's full name will not be used in this Order.
[2] Andrew M. Saul was the original Defendant in this case.  He was sued in his capacity as a public officer.
On July 9, 2021, Kilolo Kijakazi became the acting Commissioner of Social Security. Pursuant to
**Federal Rule of Civil Procedure 25(d)**, Kilolo Kijakazi has been automatically substituted as a party.

decision the final decision of the Commissioner.  (Tr. 7-11).

First, the ALJ found that Tamara B. met the insured status requirements of the Social Security Act through December 31, 2023.  (Tr. 30).  At step one of the five-step sequential analysis for determining whether an individual is disabled, the ALJ found that Tamara B. had not engaged in substantial activity since February 22, 2018, the alleged onset date.  (Tr. 30).

At step two, the ALJ determined that Tamara B. had the following severe impairments: epilepsy; a history of Grave's disease with hypothyroidism; status-post thyroidectomy; osteoarthritis of the knees; chondromalacia right patella; patellar tendinitis; asthma; fibromyalgia; adrenal insufficiency; bilateral carpal tunnel syndrome; cubital tunnel syndrome-right upper extremity; primary headache disorder; obesity; depression; and anxiety.  (Tr. 30). The ALJ found that the above medically determinable impairments significantly limited Tamara B.'s ability to perform basic work activities.  (Tr. 30).  Tamara B. also alleged other disabilities: to costochondritis; pericarditis cardiomegaly; tachycardia; hypertension; hyperlipidemia; vitamin D deficiency; vitamin B12 deficiency; and hypokalemia.  (Tr. 31).  However, the ALJ indicated that those impairments caused no more than minimal limitations on her ability to engage in basic work activities, and therefore considered them non-severe.  (Tr. 31).  The ALJ also found that Tamara B.'s left cord paresis after thyroidectomy did not meet the durational requirements needed to be considered a medically determinable "severe" impairment.  (Tr. 31).

At step three, the ALJ concluded that Tamara B. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  (Tr. 31-34).  The ALJ found that no medical evidence indicated diagnostic findings that satisfied any listed impairment.  (Tr. 31-34).

After consideration of the entire record, the ALJ then assessed Tamara B.'s residual

functional capacity (RFC) as follows:

> [T]he claimant has the residual functional capacity to perform a limited range of sedentary work featuring lifting, carrying, pushing, or pulling a maximum of 10 pounds, with occasionally lifting and carrying of less weight, such [as] small tools or file folders. Standing and/or walking no more than 2 hours total in [an] 8-hour work day and sitting 6 hours in an 8-hour work day. She can never climb ladders, ropes or scaffolds, or crawl or kneel. She can no more than occasionally perform all other postural maneuvers or operate foot controls. She can perform no more than occasional overhead reaching and no more than frequent reaching in all other directions. She can perform no more than frequent handling, fingering and feeling, with the bilateral upper extremities. She should have no exposure to workplace hazards, such as dangerous moving machinery or unprotected heights, and should not operate motorized vehicle[s] as part of job duties. She should have no concentrated exposure to sunlight, vibration, temperature extremes, high humidity, fumes, odors, dusts, gases, or poor ventilation. Her work environment should not be more than moderately noisy. She can have no more than occasional interaction with [the] public, and that interaction should not be more involved than answering a discrete question, such as the location of an item in a store.

(Tr. 34). After considering the evidence, the ALJ found that Tamara B.'s medically determinable impairments reasonably could have been expected to cause the alleged symptoms. (Tr. 35). However, he found that Tamara B.'s statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent with the record as a whole. (Tr. 35).

At step four, the ALJ found that Tamara B. was unable to perform any past relevant work. (Tr. 39). However, the ALJ found jobs that existed in significant numbers in the national economy that Tamara B. could perform. (Tr. 40-41). Therefore, the ALJ found that Tamara B. was not under a disability, as defined in the Social Security Act, from February 22, 2018, through the date of the ALJ's decision. (Tr. 41).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within

3

the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive"); ***Moore v. Colvin***, 743 F.3d 1118, 1120–21 (7th Cir. 2014); ***Bates v. Colvin***, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported h[is] decision with substantial evidence").  Courts have defined substantial evidence as "such relevant evidence as a reasonable mind might accept to support such a conclusion." ***Richardson v. Perales***, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (quoting ***Consol. Edison Co. v. NLRB***, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); *see* ***Bates***, 736 F.3d at 1098.  A court must affirm an ALJ's decision if the ALJ supported his findings with substantial evidence and if there have been no errors of law. ***Roddy v. Astrue***, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted).  However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." ***Lopez ex rel Lopez v. Barnhart***, 336 F.3d 535, 539 (7th Cir. 2003).

Disability insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act.  The claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**.  The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. §§ 404.1520, 416.920**.  The ALJ first considers whether the claimant is presently employed and "doing . . . substantial gainful activity." **20 C.F.R. §§ 404.1520(b), 416.920(b)**.

If she is, the claimant is not disabled, and the evaluation process is over.  If she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities."  **20 C.F.R. §§ 404.1520(c), 416.920(c)**; *see **Williams v. Colvin***, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments).  Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations.  **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**.  If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling.  However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of her past work.  If, at this fourth step, the claimant can perform her past relevant work, she will be found not disabled.  **20 C.F.R. §§ 404.1520(e), 416.920(e)**.  However, if the claimant shows that her impairment is so severe that she is unable to engage in her past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of her age, education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy.  **42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1520(f), 416.920(f)**; *see **Biestek v. Berryhill,*** 139 S. Ct. 1148 (2019) (upon the disability benefits applicant's request, vocational expert's refusal to provide the private market-survey data underlying her opinion regarding job availability does not categorically preclude the expert's testimony from counting as "substantial evidence" but, instead, the inquiry is case-by-case).

Tamara B. has requested that the court remand this matter for additional proceedings.  In her appeal, Tamara B. has offered two arguments in favor of remand. First, she alleges that the ALJ erred by failing to properly consider objective evidence and not submitting objective

imaging to medical expert review. Second, she claims that the ALJ erred by not considering her

alleged concentration limitations caused by her headache disorder.

"The RFC is an assessment of what work-related activities the claimant can perform

despite h[er] limitations." *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *see* **20 C.F.R.**

**§ 404.1545(a)(1)** ("Your residual functional capacity is the most you can still do despite your

limitations"); **SSR 96-8p**, at *2 ("RFC is an administrative assessment of the extent to which an

individual's medically determinable impairment(s), including any related symptoms, such as

pian, may cause physical or mental limitations or restrictions that may affect his or her capacity

to do work-related physical and mental activities"). The RFC is based upon medical evidence –

including statements from medical sources about what the claimant still can do – as well as

"other evidence, such as testimony by the claimant or his friends and family." *Craft v. Astrue*,

539 F.3d 668, 676 (7th Cir. 2008); **20 C.F.R. § 404.1545(a)(3)**.

SSR 96-8p explains how an ALJ should assess a claimant's RFC at steps four and five of

the sequential evaluation. In a section entitled, "Narrative Discussion Requirements," SSR 96-

8p specifically spells out what is needed in the ALJ's RFC analysis. This section of the Ruling

provides:

> The RFC assessment must include a narrative discussion describing how the
> evidence supports each conclusion, citing specific medical facts (e.g., laboratory
> findings) and nonmedical evidence (e.g., daily activities, observations). In
> assessing RFC, the adjudicator must discuss the individual's ability to perform
> sustained work activities in an ordinary work setting on a regular and continuing
> basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and
> describe the maximum amount of each work-related activity the individual can
> perform based on the evidence available in the case record. The adjudicator must
> also explain how any material inconsistencies or ambiguities in the evidence in
> the case record were considered and resolved.

**SSR 96-8p** (footnote omitted). Thus, as explained in this section of the Ruling, there is a

difference between what the ALJ must contemplate and what he must articulate in his written

decision.  "The ALJ is not required to address every piece of evidence or testimony presented, but [he] must provide a 'logical bridge' between the evidence and [his] conclusions."  *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)); *see Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014).  Although the ALJ does not need to discuss every piece of evidence, he cannot ignore evidence that undermines his ultimate conclusions.  *Moore,* 743 F.3d at 1123 ("The ALJ must confront the evidence that does not support his conclusion and explain why that evidence was rejected") (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009); *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012)).

Tamara B. argues that the ALJ failed to submit objective medical evidence to a medical expert which resulted in an RFC that was not supported by substantial evidence.  As an initial matter, Tamara B. repeatedly references "complex medical imaging" that was not submitted to medical scrutiny, yet she does not cite to where it is in the record or the date on which the imaging was taken. The record is 1,984 pages in length, and it is not up to the court to search the medical record for evidence to support the claimant's arguments.  *Johnson v. Advocate Health & Hospitals Corp.,* 892 F.3d 887 (7th Cir. 2018); *Fabriko Acquisition Corp v. Prokos*, 536 F.3d 605, 609 (7th Cir. 2008).  Regardless, the ALJ acknowledges that previous MRI imaging showed "high-grade chondromalacia of the patella" in her right knee and that Tamara B.'s surgeon saw a grade 4 chondromalacia in her left knee during a scope.  (Tr. 37).  In doing so, the ALJ cited to pages in the record that do not include the imaging of the grade 4 chondromalacia referenced by either the ALJ in the decision or Tamara B. in the opening brief.  (Tr. 37, 1770-71).  Even so, Tamara B. has not explained how the ALJ improperly considered or misconstrued the evidence.

To support the above argument, Tamara B. relies on *McHenry v. Berryhill*, 911 F.3d 866

(7th Cir. 2018).  In **McHenry**, the Seventh Circuit found that the ALJ impermissibly compared new MRI evidence with earlier evidence in the medical record to determine whether the claimant's impairments existed to the same degree during the relevant period.  **McHenry**, 911 F.3d at 871.  However, **McHenry** is not analogous to this case because the MRI there was relevant to determining when the claimant's condition began, and the ALJ impermissibly assessed the MRI report on his own to make that determination. **McHenry**, 911 F.3d at 871. Here, the ALJ is not impermissibly analyzing an imaging report because he made no determinations about the meaning of the report, rather, he acknowledged that it showed degeneration in the left knee.  (Tr. 37).  Tamara B. speculates that her grade 4 chondromalacia would automatically require the RFC to limit her to standing and walking for less than two hours in an eight-hour workday.  However, a diagnosis alone does not always result in disability. Additionally, the issue is not whether Tamara B. had severe impairments, but it is whether her impairments caused limitations so severe that she could not work full time.  *See **Schmidt v. Barnhart**,* 395 F.3d 737, 746 (7th Cir. 2005); ***Carradine v. Barnhart,*** 360 F.3d 751, 753 (7th Cir. 2004).  Tamara B. has not provided evidence that shows that could not stand and walk for a total of two hours in an eight-hour workday outside of the arthroscopy showing grade 4 chondromalacia. Further, she does not explain how a finding of end stage chondromalacia would automatically require further limitations.

In cases where the Seventh Circuit has held that an ALJ improperly "played doctor," the ALJ ignored relevant evidence and substituted his own judgment.  ***Olsen v. Colvin***, 551 Fed. App'x 868, 874-75 (7th Cir. 2014) (compiling cases).  There is no evidence here that shows that the ALJ substituted his own judgment or made determinations about what limitations resulted from the arthroscopy findings. *See **Olsen***, 551 Fed. App'x at 875 ("[S]imply quoting a portion of

an [imaging report] cannot satisfy [the claimants] burden to show that the ALJ's decision is not supported by substantial evidence").

Lastly, as it relates to imaging, Tamara B. asserts that the ALJ failed to explicitly discuss an abnormal lower extremity EMG which suggested lumbosacral radiculopathy and/or sciatic neuropathy.  (Tr. 1976).  Tamara B.'s argument regarding the EMG is nearly identical to her argument regarding the end stage chondromalacia finding in the arthroscopy.  She claims that the ALJ not only failed to submit this evidence to a medical expert, but also that the ALJ failed to discuss the EMG anywhere in the decision.

An ALJ is not required to discuss every piece of evidence.  ***Schumaker v. Colvin***, 632 F. App'x 861, 868 (7th Cir. 2015).  The EMG in question was interpreted by Tamara B.'s treating neurologist, Dr. Gong, in July 2019.  (Tr. 1976).  Contrary to what Tamara B. is arguing, the ALJ did not interpret the EMG on his own, he relied on Dr. Gong's review of the results.  Additionally, Tamara B. does not discuss how the EMG results of mild radiculopathy or mild neuropathy would change medical opinions or the ALJ's decision.  Instead, she speculates, without relying on any evidence, that the results of the EMG would require further postural limitations, rendering her disabled.

Similarly, Tamara B.'s argument that the ALJ erred by failing to include off task time to accommodate her headache disorder is based wholly on speculation. The ALJ provided for Tamara B.'s headaches in the RFC by limiting her to no concentrated exposure to sunlight, vibration, temperature extremes, high humidity, fumes, odors, dusts, gases, or poor ventilation, and finding that her work environment should not be more than moderately noisy.  (Tr. 34). Tamara B. asserts that the ALJ's limitations regarding light and noise was not enough to prevent her migraines because her migraines caused sensitivity to light and sound, and therefore she

required a job in the dark and complete silence.  This argument is illogical.  The ALJ noted that

although an EEG in 2014 corroborated her headache disorder, her medications reportedly helped.

(Tr. 35).  Additionally, her headaches were associated with photophobia (sensitivity to light), and

the ALJ provided for that in the RFC by limiting her to no concentrated exposure to sunlight.

The ALJ supported his decision with substantial evidence, and Tamara B.'s speculative

arguments, when stripped down, are requests for this Court to reweigh evidence, which it cannot

do.

Tamara B. also relies on SSR 19-4p to argue that photophobia "may cause a person to

have difficulty sustaining attention and concentration."  **SSR 19-4p**.  While it is possible that

photophobia may cause difficulty in sustaining attention and concentration, Tamara B. has

provided no evidence that suggests that *her* migraines limit her ability to sustain attention and

concentration, nor has she provided evidence that the ALJ's limitations would not accommodate

her headache disorder.  Moreover, as the ALJ noted in the decision, her medication helps with

her headaches and, at times, alleviated them.  (Tr. 35).

Based on the foregoing reasons, the decision of the Commissioner is **AFFIRMED**.

ENTERED this 21st day of July, 2022.

/s/ Andrew P. Rodovich
United States Magistrate Judge